PHILLIP D. ANTONELLI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Antonelli v. Commissioner
Docket No. 5664-78.
United States Tax Court
T.C. Memo 1980-544; 1980 Tax Ct. Memo LEXIS 41; 41 T.C.M. (CCH) 502; T.C.M. (RIA) 80544; December 8, 1980
Paul T. Wright, for the petitioner. Jeff P. Ehrlich, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was tried before Special Trial Judge John J. Pajak pursuant to Rule 180, Rules of Practice and Procedure of the United States Tax Court. His report was served on the parties. No exceptions to the report were filed. After careful consideration, the Special Trial Judge's report, which is set forth below, is adopted. REPORT OF SPECIAL TRIAL JUDGE *
PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioner's income tax, plus additions to tax under section 6653(a), [1] as follows: *43 Additions to Tax
Year
Deficiency
Under Section 6653(a)
1973
$ 1,071.26
$53.56
1974
$ 1,807.67
$93.53
1975
$ 502.21
$25.11
The issues to be decided are: 1. Whether the purported conveyance by petitioner of his lifetime services to a family trust was effective to shift the incidence of taxation on his compensation which he paid to the trust. 2. Whether other income reported by the trust should have been reported by petitioner under sections 671 through 677. 3. Whether any part of petitioner's underpayment of tax for the years in issue was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference Phillip D. Antonelli (petitioner) [2] was a legal resident of Colorado when he filed his petition. *44 On September 25, 1972, petitioner executed, as grantor, a trust instrument creating "The Philip D. Antonelli Family Estate (A Trust)" (hereinafter the "Trust"). The trust form used by petitioner was one promoted by Educational Scientific Publishers (ESP). Petitioner was in contact with various persons employed by ESP or using ESP trusts. Petitioner named Lois M. Hawes and James R. Walsh as trustees in the declaration of trust. However, at various times during the first days of the existence of the Trust, Lois M. Hawes, James R. Walsh, Kathryn Walsh, Rena Antonelli (Rena) and petitioner executed documents as trustees. Lois M. Hawes, James R. Walsh and Kathryn Walsh were trustees only to set up the Trust, never were intended to exercise any authority as trustees of the Trust, and resigned as trustees shortly after the creation of the Trust. The purpose of the Trust, as set forth in the declaration of trust, was to accept real and pewrsonal properties conveyed to the Trust by its creator (petitioner), including the use of his lifetime services and remuneration therefrom. This transfer was made so that petitioner could "maximize his or her lifetime efforts through the utilization *45 of his or her Constitutional rights." The Trust was to be administered by its trustees, with a majority vote of the trustees required for expenditures (including compensation of the trustees). The Trust was established for a period of 25 years. However, at their discretion the trustees by unanimous vote could liquidate the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed pro rata to its beneficiaries. On May 4, 1976, petitioner executed an amendment to the Trust which stated that the "Trust is expressly irrevocable, and may not be altered or amended in any respect unless specifically authorized by this instrument, and it may not be terminated except through distributions permitted by this instrument." On September 25, 1972, Rena, petitioner's mother, executed documents conveying certain personal property to petitioner. The conveyance was made with the understanding that the property was to be conveyed to the Trust in exchange for beneficial units in the Trust. On September 26, 1972, petitioner executed a document which purported to convey to the Trust *46 "the exclusive use of [petitioner's] life time services and all of the currently earned remuneration accruing therefrom." On the same day, petitioner executed a document conveying the personal property received from his mother, together with all of his own personal property (principally ordinary household goods) to the Trust. In return, petitioner received beneficial units in the Trust. The beneficial interests were divided into 100 units in certificate form attached to the trust indenture. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the trust property. This was set forth in the certificates of beneficial interest which stated that the benefits conveyed consisted solely of the "emoluments as distributed by the action of the Trustees and nothing more." The certificates were transferable and in fact various transfers of the units were made. On September 26, 1972, the Trust opened three bank accounts. Petitioner and Rena were authorized to write checks or withdraw amounts on the accounts. Petitioner wrote checks on the Trust's checking account to pay his personal and family living expenses. Petitioner at all *47 times retained full control over the assets of the Trust, and as trustee of the Trust, was empowered to "do anything any citizen may do" with those assets. After creation of the Trust, petitioner continued to utilize the property which had been transferred to the Trust, together with other property leased to the Trust, for his own benefit and in exactly the same manner as it would have been used had the Trust not been created. The remuneration for petitioner's services was paid by his employer in a check made out to petitioner and then endorsed to the Trust by him. After the creation of the Trust, the Trust reported all service income earned by petitioner (with the exception of a "consulting fee" paid to petitioner and deducted by the Trust), as well as certain other income realized from assets conveyed to it. The Trust deducted from income the cost of maintaining all of the personal assets of petitioner which had been transferred to it, as well as certain personal expenditures of the petitioner. Included in the deductions were costs of maintaining petitioner's residence, and the cost of maintaining petitioner's automobile which had been "leased" to the Trust. The consideration *48 for this lease of the automobile was that petitioner was allowed to use the vehicle. He did not report income as a result of this transaction. On petitioner's 1974 and 1975 returns his wages were shown and then deducted as payments of "contract income" to the Trust. The net result was that the only income reported as petitioner's on his returns for 1973, 1974 and 1975 were the so-called consulting fees from the Trust. Respondent determined that all income reported by the Trust, except for small amounts of dividend income, should have been reported by petitioner. Respondent also determined that petitioner was liable for the addition to tax under section 6653(a). Certain other adjustments were made which are not in issue in this case. These adjustments were to reflect respondent's determination as to income taxation and to give petitioner the benefit of itemized deductions not previously claimed by him. OPINION For all the reasons set forth below, respondent's determination must be sustained. [3]
*49 One of the most elementary principles of the income tax law is that income is taxable to the one who earns it and taxation of that income cannot be escaped by anticipatory arrangements assigning it to someone else. . This principle has been applied to wage earners in an ever-lengthening list of so-called family trust cases similar to the present one. See, e.g. , affd. ; , appeal dismissed (10th Cir., July 31, 1980); ; ; , affd. , cert. denied . This case must be added to that list since petitioner's wages are taxable to him. The only trustee who held certificates of beneficial interest in the trust besides petitioner was his mother, Rena.Petitioner has failed to prove that her interest was a "substantial beneficial *50 interest." Even if her interest could be characterized as substantial, the record does not indicate in any way that Philip and Rena were adverse parties. Sections 672 and 674; see, ; ; Further, we do not deem it significant that petitioner executed an amendment to the Trust which states the Trust is irrevocable and may not be terminated except through distributions permitted by the Trust instrument.Petitioner had the power to and did make distributions to himself. See Respondent included in petitioner's income both the interest income and petitioner's wages reported by the Trust. We think it clear that, if the trust had any economic substance whatever, the grantor trust provisions of sections 671 through 677 require this income to be taxed to petitioner. In any event, review of this record leads us to conclude that the Trust lacked economic substance and thus was a sham for Federal income tax purposes for the reasons set forth in *51 We also have concluded that petitioner has failed to prove that the underpayment of tax was not due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a).[5] Upon consideration of the record as a whole, we are convinced that petitioner knew that the tax laws did not permit him to avoid income taxes on his earnings by assigning then to a trust. Petitioner disregarded the purported assignments of lifetime service by reporting the so-called trustee fees on his own individual tax returns. He entered into this elaborate charade and created the Trust to carry out a flagrant tax avoidance scheme. We find that the additions to tax were properly imposed. *52 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
*. This report is prepared pursuant to Rule 182(b), Rules of Practice and Procedure of the United States Tax Court.↩
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated.↩
2. We note that petitioner actually spells his first name "Philip", whereas the statutory notice of deficiency and the petition filed by petitioner use the spelling set forth above. The record references to "Philip" and to "Phillip" are to the same person.↩
3. The Court observes that this case and two others, by agreement of the parties, are test cases for many other petitioners whose pending cases involve issues similar to those in the test cases. These three test cases are -   , -   , and -   . In order to conserve the time of this Court and the parties, petitioner's and respondent's counsel in the other cases have stipulated that their cases will be governed by various issues decided in the test cases. This procedure is realistic and practical and is encouraged by the Rules and practice of this Court. The Court has individually reviewed the ostensibly different ESP trusts involved in the Antonelli, Basham and Corcoran cases. We found their operative provisions to be most similar in nature. The ABC's to be derived from our holdings in Antonelli, Basham and Concoran↩ are that the arrangements reflected in ESP trusts do not shelter a taxpayer from taxation.
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩